# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Jan 16, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>the location of the cellular devices assigned phone numbers: (414) 416-3779 and (414) 539-8890; (See Attachments) | Case No. 24 MJ 25 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A; over which this Court has jurisdiction pursuant to 18 U.S.C. §§ 2703 and 2711 and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C §§ 2119 and 924(c) | Carjacking; and use of a firearm during the commission of a violent crime; |

The application is based on these facts:
See Affidavit in Support of an Application for a Search Warrant. I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by ATF. See 18 U.S.C. §§ 3122(b), 3123(b).

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

WILLIAM BERENS  Digitally signed by WILLIAM BERENS
Date: 2024.01.12 14:21:55 -06'00'

*Applicant's signature*

AUSA William Berens, US DOJ
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 01/16/2024

*/s/ William E. Duffin*
*Judge's signature*

City and state: Milwaukee, WI    Hon. William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Sean Carlson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number **(414) 416-3779 (Target Device 1),** and the user of cellular phone number **(414) 539-8890 (Target Device 2)**, whose cellular providers are US Cellular and AT&T Wireless, which is described in Attachment A.

2. I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Milwaukee Field Office since November 2015. I have been employed as a full-time law enforcement officer for approximately fifteen years. Prior to my employment at ATF, I was a Patrol Officer at the Hammond Police Department in Hammond, Indiana for over four (4) years, and then I served approximately five (5) years as a Federal Air Marshal with the U.S. Department of Homeland Security.

3. As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled

substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

4. Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

5. Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes. Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

6. I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

7. I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is

intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. One purpose of applying for this warrant is to determine with precision the Target Cellular Devices' location. However, there is reason to believe the Target Cellular Devices are currently located somewhere within this district because investigators have utilized timing advanced cellphone data to link the devices to the criminal activity in the Eastern District of Wisconsin. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Devices outside the district provided the device is within the district when the warrant is issued.

10. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 2119 (carjacking) and Title 18 U.S.C. § 924(c)(use of a firearm during the commission of a violent crime) have been committed by the users of the Target Cellular Devices. There is also probable cause to believe that the location of the Target Cellular Devices will constitute evidence of those criminal violations, including leading to the identification of individuals who are engaged in the commission of these offenses and identifying locations where the target engages in criminal activity. Investigators intend to use the cell site simulator to locate and identify individuals in possession of the phone, and identify residences where evidence could be located. Due to the fact that some possessors are unidentified, it is anticipated that traditional methods to locate the users of the Target Cellular Devices would be difficult without the use of a mobile cell site simulator. Utilization of a cell site simulator will allow agents to effectively locate the Target Cellular Devices and identify their possessors.

11. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) &

(4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

12. On October 26, 2023, the Milwaukee Police Department (MPD) responded to an armed carjacking which occurred at 3915 S. Logan Avenue, Milwaukee, Wisconsin (Location 1). When officers arrived the spoke to the victim, identified as B.F. (DOB XX/XX/1989) who stated he was seated in the driver's seat of his vehicle, a gray 2018 Volkswagen Passat sedan (bearing Wisconsin license plate ARV1960), using an iPad for work purposes. B.F. stated at approximately 5:20 pm (CST) he observed an unknown black male (suspect 1) walk up to his front driver's door, open the closed door, and order him out of the vehicle. B.F. stated suspect 1 pointed, what B.F. believed to be, a black semi-automatic with a light-colored grip, at his head. B.F. stated he complied and exited the vehicle. B.F. stated after he got out of the vehicle, suspect 1 grabbed him and pulled him to the middle of S. Logan Avenue and asked B.F. what other property he possessed. B.F. stated he told suspect 1 he had a wallet and suspect 1 took the wallet from him. B.F. stated suspect 1 then got into the driver seat of the aforementioned Volkswagen sedan, and another black male (suspect 2), got into the front passenger seat. B.F. stated the suspects then drove away west bound in the alley from S. Logan Avenue.

13. B.F. described suspect 1 as a black male, late teens to early 20's, approximately 5'10", skinny build, wearing a charcoal gray hooded sweatshirt with the hood up, and blue jeans with different shades. B.F. stated the sweatshirt had a large lighter colored emblem on the chest.

4

14. B.F. described suspect 2 as a black male, unknown age, approximately 5'04" to 5'07", skinny build, wearing a dark gray hooded sweatshirt with the hood up.

15. MPD detectives later spoke to witness J. N. who stated she observed two black males, wearing hooded sweatshirts enter a gray vehicle and drive away. Detectives located and viewed ring doorbell footage which corroborated the victim's statement of events. Detectives describe suspect 1 as black male, approximately 5'10", skinny build, wearing a dark colored hooded sweatshirt with a large white or light-colored chest emblem on it, possibly blue jeans, and dark shoes. Suspect 2 was observed to be a black male, approximately 5'05", skinny build, wearing a light gray hooded sweatshirt with the hood up, dark pants, and white or light-colored shoes.

16. A short time later, MPD responded and talked to a witness, N.S. N.S. stated at approximately 05:30 pm, they were jogging westbound on E. Howard Avenue past S. Pine Avenue, when he located an Apple iPhone in the middle of the sidewalk on the north end of E. Howard Ave. just west of S. Pine Avenue (Location 2). N.S. stated he called the number displayed on the phones lock screen and it resulted in MPD being dispatched to his location. The phone was determined by MPD to be B.F.'s phone, which was inside his vehicle during the carjacking, and was subsequently returned to B.F.

**Auto Zone Purchase (Location 3)**

17. While conducting their investigation into the October 26, 2023 carjacking of the aforementioned Volkswagen Passat sedan, Detectives determined the vehicle was spotted at an Auto Zone, located at 208 E. Capitol Drive, Milwaukee, Wisconsin (Location 3), on October 27, 2023 at 12:38 pm (CST). Video footage collected from the business depicts the aforementioned Volkswagen Passat sedan arrive and park in the parking lot of the business. MPD Detective Michael Martin observed the front passenger exit the vehicle. Det. Martin recognized this

5

individual to be Suspect 1 from the carjacking on October 26, 2023. The surveillance footage further depicted Suspect 1 enter the store and purchase a roll of window tint, which the suspect pays for by utilizing his phones tap-to-pay feature, at the register. Suspect 1 then exits the store, gets back into the front passenger seat of the Passat, and the vehicle drives away.

18. Det. Martin further described Suspect 1, from the surveillance video, as a black male, approximately 20 years old, 5'10" to 6'00", skinny build, dark complexion, wearing a black "pooh sheisty" pull over head mask, a black hooded sweatshirt with a cartoon "Popeye the Sailor Man" emblem on it, black jogging pants with a vertical gray stripe on the side, and a possible Milwaukee Bucks deer head logo on the stripe, electric blue underwear, black shoes and white socks.

### October 27, 2023 Fleeing/Eluding MPD (Location 4 and 5)

19. On October 27, 2023, at approximately 5:53 pm (CST), MPD observed a vehicle matching the description of the aforementioned Volkswagen Passat, which officers knew to be stolen, driving southbound on N. 51st Street from W. Capitol Avenue (Location 4). MPD Officers initiated a traffic stop, in their fully marked MPD squad, and the vehicle failed to stop and fled from officers at a high rate of speed. MPD maintained visual contact of the vehicle until the pursuit ended in the area of 2301 N. 18th Street (Location 5), when the vehicle stopped and four occupants fled on foot. MPD gave chase and arrested two of the four occupants the vehicle. The occupants were further described as:

- Driver of the vehicle, arrested and identified as John M. DAVIS (B/M, XX/1997), wearing a dark colored hooded sweatshirt with a "Glock" firearms brand graphic and white writing with the text "No Gun, No Fun" on the back of the sweatshirt.

6

- Rear driver side passenger, arrested and identified as Willie E. ADAMS (B/M, DOB 12/02/1997)
- Front passenger, black male, wearing a black hooded sweatshirt, red track pants with white stripes
- Rear passenger side passenger, black male, wearing a black hooded sweatshirt, black pants and blue underwear

### Timing Advanced Area Searches and Tower Dumps

20. On November 06, 2023, the Honorable William Duffin, U.S. Magistrate Judge in the Eastern District of Wisconsin signed a search warrant and court order which authorized Timing Advance Area Searches and tower dumps in relation to the offenses listed above. These warrants returned thousands of lines of cellular data and information which was then analyzed to initially identify only those identifiers whose records were consistent with the facts of the investigation, including being in the geographic area of more than one location. As a summary the following locations were queried:

- Location 1 – 3915 S. Logan Ave, Milwaukee, Wisconsin on October 26, 2023
- Location 2 – Intersection of E. Howard Avenue and S. Pine Avenue, Milwaukee, Wisconsin on October 26, 2023
- Location 3 – 208 E. Capital Drive, Milwaukee, Wisconsin on October 27, 2023
- Location 4 – Intersection of N. 51st Blvd. and W. Capitol Drive, Milwaukee, Wisconsin on October 27, 2023
- Location 5 – 2301 N. 18th Street, Milwaukee, Wisconsin on October 27, 2023

### Analysis of Timing Advanced Area Searches and Tower Dumps

21.     The information was analyzed by the Federal Bureau of Investigation (FBI) Cellular Analysis Team who provided the information to the affiant and summarized the info below as to the identification of cellular phone numbers to include **Target Device 1 and Target Device 2**.

22.     The initial review provided to the affiant for the US Cellular and AT&T returns provided an initial list of approximately **20 Phone Numbers** which hit at least two (2) of the five (5) locations which would include records around the carjacking locations (Location 1 and 2) **and** any of the other locations which include the Auto Zone (Location 3) and Fleeing/Eluding (Location 4 and 5). This initial analysis was done due to the largest distance being between the carjacking locations and other points. Your affiant notes that the 20 phone numbers were provided to him out of thousands of other identifiers and included **Target Device 1** and **Target Device 2**. Furthermore, **Target Device 2** was noted to have had records at three (3) locations.

23.     On December 04, 2023, your affiant queried the telephone number **(414) 416-3779 (Target Device 1)** through North Central HIDTA. Your affiant was notified by North Central HIDTA, that this number was identified in HIDTA reports and HIDTA case management software as active number pertaining to an ongoing Milwaukee Police Department narcotics investigation. Your affiant spoke to MPD Det. John Schott, who stated the MPD had determined that the current user of **(414) 416-3779 (Target Device 1)** is identified as Alvin NICKSION (b/m, DOB XX/XX/1991).

24.     After reviewing the initial information from AT&T and US Cellular your affiant received the results from T-Mobile which were then analyzed and revealed that a unique International Mobile Subscriber Identity (IMSI) 310260685268367 had records within all five (5)

search locations. Additionally, the tower dump records were reviewed for that IMSI which showed the associated phone number for that IMSI as **(414) 435-6392**.

25. Your affiant notes that the Timing Advance area searches provide more detailed location information for the cellular devices, but communications such as voice and text are contained within the tower dump records. The tower dump records were reviewed and it was identified that **Target Device 1** which was found to have the HIDTA deconfliction information and the cellular number **(414) 435-6392**, both had phone contact with the phone number **(414) 539-8890 (Target Device 2),** and **Target Device 2** was identified as having records at three (3) locations and within the initial 20 phone numbers provided to your affiant.

26. In summary, the target devices have records in the below locations and communication with each other as noted below. Your affiant further notes that for the purpose of the analysis the two locations for the carjacking (Location 1 and Location 2) are extremely close in proximity and are summarized as a single location/event below.

- a. **(414) 435-6392**: Records within all five (5) search areas (4 main locations) and communication with **Target Device 2**.
- b. **Target Device 1**: Records within two (2) main locations – Carjacking and AutoZone and communication with **Target Device 2**.
- c. **Target Device 2**: Records within three (3) main locations – Carjacking and two (2) Fleeing/eluding and communication with **(414) 435-6392** and **Target Device 1**.

27. Based on the multiple locations for all the target devices, including all target devices having records in the geographic area of the carjacking, in addition to the target devices being in contact with another as noted above, there is probable cause to believe that the users of the target devices are involved in the violations being investigated and that obtaining both

9

historical and prospective location information will provide evidence of the violations including but not limited to the identities of the subjects, and the locations where they live and the physical cellular device both which can contain additional evidence related to the investigation.

### John DAVIS as the user of (414) 435-6392

28. On October 27, 2023, at approximately 5:53 pm (CST), MPD observed a vehicle matching the description of the aforementioned Volkswagen Passat, which officers knew to be stolen, driving southbound on N. 51st Street from W. Capitol Avenue. MPD Officers initiated a traffic stop, in their fully marked MPD squad, and the vehicle failed to stop and fled from officers at a high rate of speed. MPD maintained visual contact of the vehicle until the pursuit ended in the area of 2301 N. 18th Street, when the vehicle stopped and four occupants fled on foot. MPD gave chase and arrested two of the four occupants the vehicle. The occupants were further described as:

- Driver of the vehicle, arrested and identified as John M. DAVIS (B/M, XX/1997), wearing a dark colored hooded sweatshirt with a "Glock" firearms brand graphic and white writing with the text "No Gun, No Fun" on the back of the sweatshirt.
- Rear driver side passenger, arrested and identified as Willie E. ADAMS (B/M, DOB XX/XX/1997).
- Front passenger, black male, wearing a black hooded sweatshirt, red track pants with white stripes.
- Rear passenger side passenger, black male, wearing a black hooded sweatshirt, black pants and blue underwear.

29. Following the arrest of John M. DAVIS on October 27, 2023, MPD Detectives conducted a mirandized interview with DAVIS. DAVIS stated there were four occupants inside

10

the aforementioned Volkswagen sedan during the pursuit, and he admitted to being the driver. DAVIS stated he did not know the car was stolen and was fleeing because he did not have a valid driver's license. Davis stated the car belonged to the neighbor of his girlfriend, whom DAVIS knew only as "K". DAVIS described "K" as a black male, and DAVIS stated "K" was in the front passenger seat of the vehicle at the time of the pursuit. DAVIS stated he had two phones that belonged to him in his possession during the pursuit. DAVIS stated he had an Apple iPhone 11 with no case, with the phone number of "(414) 425-6392"**.** It should be noted, the number which cell phone records indicate was in proximity to aforementioned locations has the phone number **(414) 425-6392.**

30. Your affiant queried jail calls placed from the Milwaukee County Jail to **(414) 425-6392** and determined inmate John DAVIS placed one call to **(414) 425-6392** on October 31, 2023 and one call on November 1, 2023. Your affiant also learned John DAVIS placed 44 calls to **(414) 416-3779 (Target Device 1)**, while in custody, between October 29, 2023 and December 19, 2023, and 53 calls to **(414) 539-8890 (Target Device 2)**, while in custody, between November 01, 2023 and December 19, 2023. It should be noted, your affiant is aware John DAVIS was transferred to Dodge County Correctional on December 20, 2023.

**Ping Warrant**

31. On January 08, 2024, the Honorable William Duffin, U.S. Magistrate Judge authorized a search warrant which allowed for the collection of real time location data for **(414) 425-6392, (414) 416-3779 (Target Device 1),** and **(414) 539-8890 (Target Device 2).** Upon serving the warrant, your affiant was notified by T-Mobile that service for **(414) 425-6392** had recently been terminated. Upon serving the warrant to U.S. Cellular for **(414) 416-3779 (Target Device 1)**, your affiant was informed that U.S. Cellular lacks the technical capability to provide

11

investigators with emails documenting the device's location in real time; however, they stated they do have the technical capability to assist agents with utilizing mobile cell site simulators to locate devices.

32. On January 10, 2024, your affiant and SA Frank Rutter attempted surveillance on **(414) 539-8890 (Target Device 2).** Due to the fact that the possessor of the device is currently unidentified with no known vehicles, traditional surveillance methods have proven unsuccessful. Additionally, the radius of the pings provided by AT&T were often in excess of 1000 meters making traditional methods of locating the device challenging.

## MANNER OF EXECUTION

33. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

34. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Devices or receiving signals from cellular devices, including the Target Cellular Devices Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Devices and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Devices and use that information to determine the Target Cellular Devices' location, even if it is located inside a house, apartment, or other building.

12

35. The investigative device may interrupt cellular service of phones or other cellular devices within its range. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Devices, the device may briefly exchange signals with all phones or other cellular devices in its range. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

## AUTHORIZATION REQUEST

36. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

37. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or users of the Target Cellular Devices would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and continue to flee from prosecution. *See* 18

38. U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

39. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Devices outside of daytime hours.

40. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

Sean Carlson
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me
On: 01/16/2024

Hon. William E. Duffin
UNITED STATES MAGISTRATE JUDGE

CLERK'S OFFICE
A TRUE COPY
Jan 16, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular devices assigned phone numbers:

a. **(414) 416-3779 (Target Device 1),** whose service provider is US Cellular, a wireless telephone service provider headquartered in Chicago, Illinois.

b. **(414) 539-8890 (Target Device 2),** whose service provider is AT&T, a wireless telephone service provider headquartered in North Palm Beach, Florida

# ATTACHMENT B

Pursuant to an investigation of the users of the Target Cellular Devices for a violation of Title 18 U.S.C. § 2119 (carjacking) and Title 18 U.S.C. § 924(c)(use of a firearm during the commission of a violent crime) this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by the Target Cellular Devices for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the Target Cellular Devices in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

16